**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPOCH COMPANY, LTD.<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>Defendants. | Civil Action No. 26-cv-2383 |

# COMPLAINT

EPOCH COMPANY, LTD. ("Plaintiff" or "EPOCH") by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"). Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and the goodwill associated with Plaintiff's valuable intellectual property by selling and/or offering for sale unauthorized, unlicensed, and infringing products that violate Plaintiff's federally registered copyright (the "Infringing Products"). Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating e-commerce stores using their respective Store Names and Seller Names set forth on Schedule "A" hereto (collectively, the "Seller Aliases"). As set forth below, Defendants, without authorization, are using Plaintiff's federally registered copyright by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling Infringing Products bearing unlicensed and infringing reproductions of Plaintiff's copyrighted work. Plaintiff is forced to file this action to combat Defendants' infringement of

Plaintiff's copyright, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's copyright; therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining. In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1. This action has been filed to combat online copyright infringers who trade upon Plaintiff's reputation, goodwill, and valuable intellectual property by selling and/or offering for sale Infringing Products using Plaintiff's federally registered copyright without authorization or authority to engage in such activities.

2. Plaintiff is in the business of creating, marketing, licensing, selling, and distributing AQUABEADS products featuring EPOCH's distinctive designs. AQUABEADS products have been widely recognized and distributed across numerous toy and craft categories, including bead craft kits, playsets, refill packs, themed character sets, and other creative merchandise. AQUABEADS' distinctive water-activated bead concept, colorful designs, and creative play patterns have become widely recognized by consumers worldwide. EPOCH develops, markets, licenses, and distributes products bearing AQUABEADS' artwork throughout the world, including within this Judicial District. EPOCH is the official licensing representative and source of authentic products featuring AQUABEADS' artwork (hereinafter referred to as the "AQUABEADS Products"):

https://www.aquabeadsart.com/en-us/







Notice on products claiming to be compatible with Aquabeads

EPOCH COMPANY, LTD. is aware that there are numerous stick-with-water beads being offered world-wide by third-party sellers.
In the past few years, we have discovered numerous products claiming to be "compatible with Aquabeads".
These products claiming to be "compatible with Aquabeads" are not provided by, sponsored by, or associated in any way with EPOCH COMPANY, LTD. Nor are they associated with its products sold under the trademark, Aquabeads. Therefore, we cannot guarantee the quality, or the safety of these third-party products, nor can we guarantee the compatibility of any of the third-party beads, or accessory products such as pens or trays.
EPOCH COMPANY, LTD. does not take any responsibility or liability for any damage or loss caused by the use of these third-party products.
First sold in 2004 as an arts & crafts range of toys created by EPOCH COMPANY, LTD., Aquabeads products are now sold in over 45 countries and regions.
Aquabeads products comply with the toy safety standards of all the countries and regions where they are sold.
The safety and quality of all materials used in Aquabeads products are guaranteed, and assured by toy testing based on the applicable toy safety standards of each country and/or region in which they are sold.
** "Aquabeads" is a trademark of EPOCH COMPANY, LTD.

3. EPOCH COMPANY, LTD. is the owner of Copyright Registration No. VA0002329189 (the "AQUABEADS Work").

| Copyright Title | Copyright Registration | Copyrighted Work |
|---|---|---|
| Beginners Studio Template | VA0002329189 |  |

4. A true and correct copy of the registration certificate for the AQUABEADS Work is attached as Exhibit 1.

5. In the ordinary course of its business, Plaintiff conducted an investigation and discovered that Defendants were marketing and selling Infringing Products that displayed unauthorized reproductions of the AQUABEADS Work, without any license or authorization from Plaintiff.

6. Upon information and belief, Defendants' infringing activities of offering for sale, marketing, and selling Infringing Products utilizing the AQUABEADS Work arise from the same transaction, occurrence, or series of transactions or occurrences. Specifically, upon information and belief, Defendants are actively participating in a common scheme to distribute and sell Infringing Products to United States consumers. Further, Defendants, upon information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise

distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics, including similar products, product descriptions, pricing strategies, payment processors, shipping options and source materials, suggestive of common ownership or a coordinated scheme.

7. Plaintiff has been and continues to be irreparably harmed by Defendants' blatant and ongoing infringement and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for this sustained injury.

8. Plaintiff therefore brings this action for federal copyright infringement pursuant to 17 U.S.C. § 501(a), *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims in this action are brought under the Copyright Act, 17 U.S.C. § 101 *et seq*.

### Personal Jurisdiction

10. Federal courts may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)). This Court may exercise personal jurisdiction over a non-resident of the Commonwealth in which the Court sits to the extent authorized by Pennsylvania law. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat. § 5322(a), which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph:

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat. § 5322(a). Courts regularly confer personal jurisdiction on a given defendant based on that defendant's operation or use of an interactive website through which products may be purchased and are sold to consumers within the judicial district. *See*, *e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV-DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

11. Although the Third Circuit has not yet considered specific jurisdictional arguments in the context of an online infringement case, this Court has found guidance on this issue from the rulings of the Seventh Circuit. *Nifty Home Prods. v. Ladynana United States*, No. 22-cv-0994, 2023 U.S. Dist. LEXIS 79743 at *13-14 (W.D. Pa. May 5, 2023). Specifically, the Court has applied the Seventh Circuit's rulings to establish personal jurisdiction over China-based infringers that have conducted commerce over the internet, even if those infringers have no presence in the United States. *Id.* at *15 (citing *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Talisman Designs, LLC v. Dasani, et al.*, No. 20-cv-1084, slip op., p. 2 (W.D. Pa. Oct. 13, 2020)). "[S]ellers on Amazon, Temu, and eBay 'may not avoid personal jurisdiction by this Court on the basis that the Great Wall of China renders the district court without jurisdiction to protect brand owners from

counterfeit products like this.'" *Id.* (quoting *Dasani*, No. 20-cv-1084, slip op., p. 2). Foreign counterfeiting defendants are also subject to jurisdiction in this Court, and elsewhere in the United States, under Federal Rule of Civil Procedure 4(k)(2), since they lack sufficient contact with any particular state and have not established which forum would be proper venue to bring suit. *Id.* at *16 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)).

12. Alternatively, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

13. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through online platforms and storefronts on Third Party Platforms, under the Seller Aliases, as well as any and all presently unknown accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. Through these storefronts, consumers in the United States, including Pennsylvania, can view Defendants' product listings, communicate with Defendants regarding their listings for Infringing Products, place orders, receive invoices, and purchase

Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

14. Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them, hold or control in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

15. Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

16. Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

17. Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

18. Plaintiff also markets and offers for sale its genuine products to consumers in the U.S., including Pennsylvania through authorized distributors and third parties via the Internet.

19. Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array

of queries. By and through their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's Products on various online marketplaces and/or displacing genuine products and driving down the retail market price; (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about this brand and products.

20. Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

21. Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

22. Upon information and belief, Defendants are aware of Plaintiff's Products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**Venue**

23. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), which authorizes a civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "In making a determination as to whether venue is proper under §1391(b)(2), '[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'[.]'" *Kneuven v. Lysten, LLC*, Civil Action No. 2:23-cv-00368, 2023 U.S. Dist. LEXIS 187157 at *6 (W.D. Pa. Oct. 17, 2023) (quoting *Bockman v. First Am. Marketing Corp.,* 459 F. App'x 157, 161 (3d Cir. 2012)). Section 1391(b)(2)

does not require a court to determine the best forum, or the forum with the most substantial events. *Murphy v. Humbolt Clothing Co.,* Civil Action No. 1:20-cv-58-SPB, 2021 U.S. Dist. LEXIS 17072 at *21 (W.D. Pa. Jan. 29, 2021). "In fact, venue may be proper in more than one district. It is necessary 'only that a substantial part of the events occurred [in the forum where suit is brought].'" *Id.* (quoting *Stursberg v. Morrison Sund, Pllc,* No. CV 20-1635-KSM, 2020 U.S. Dist. LEXIS 233042, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020)). Further, as stated above, both Plaintiff and Defendants conduct substantial business in Pennsylvania.

24. Here, Plaintiff's infringement investigation centered not only on the sale of products with substantially similar patterns to the AQUABEADS Work, but also the commonwealth of Pennsylvania, in which Defendants were selling the Infringing Products. Therefore, a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. As discussed above and shown in Plaintiff's presented evidence attached as Exhibit 2, each of the Defendants offers for sale products infringing upon the AQUABEADS Work to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrate that Defendants were and are offering for sale and/or selling Infringing Products in this forum. This exemplary evidence is included in the table below:

[redacted]

25. Each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district. *See Murphy*, 2021 U.S. Dist. LEXIS 17072 at *21. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

26. Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states that "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction in this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign entities who do not reside in any other United States judicial district, as provided for in Section 1391(b)(3), meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non-resident defendants may be sued in any judicial district. *See Nationwide Prop. & Cas. Ins. Co. v. Rockford Commer. Warehouse, Inc.,* No. 2:18-cv-01458-RJC, 2020 U.S. Dist. LEXIS 74182 at *13 (W.D. Pa. Apr. 28, 2020) (holding that venue was proper over a China-based company in any district).

27. Accordingly, venue is proper before this Court because a substantial part of the events giving rise to Plaintiff's claims occurred in the district, or because Defendants do not reside in any State and are therefore statutorily subject to this Court's exercise of personal jurisdiction, and because Defendants are nonresidents of the United States.

28. For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

**Plaintiff EPOCH COMPANY, LTD.**

29. Plaintiff EPOCH COMPANY, LTD. is a Japanese company and has a place of business at 2-2, 2-Chome, Komagata, Taito-ku, Tokyo 111-8618, Japan.

30. First sold in 2004 as an arts & crafts range of toys created by EPOCH COMPANY, LTD., genuine AQUABEADS products are now sold in over 45 countries and regions. Plaintiff manufactures and sells its AQUABEADS products through its own online webstores and licenses the use of the AQUABEADS Work to a limited number of manufacturers of products that are sold online around the world. The presence of Plaintiff's AQUABEADS Work thus increases the value of Plaintiff's products by increasing brand awareness and consumer confidence.

31. AQUABEADS products comply with the toy safety standards of all the countries and regions where they are sold. The safety and quality of all materials used in AQUABEADS products are guaranteed, and assured by toy testing based on the applicable toy safety standards of each country and/or region in which they are sold.

32. Plaintiff's registration for the AQUABEADS Work is valid and enforceable.

33. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and promoting its AQUABEADS products.

34. The presence of Plaintiff's AQUABEADS Work increases the value of the Plaintiff's Products by increasing brand awareness and consumer confidence.

35. The AQUABEADS Work is used by Plaintiff to, among other things, market and advertise Plaintiff's Products, representing significant commercial value in the marketplace with the potential to generate millions of dollars in revenue for Plaintiff.

36. Plaintiff possesses exclusive rights under the Copyright Act to reproduce, prepare derivative works based upon, distribute copies of, and publicly display the AQUABEADS Work.

37. Plaintiff is widely advertising and promoting genuine goods utilizing the AQUABEADS Work via the Internet. Third Party Platforms have become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff has been expending significant monetary resources on Internet marketing, including search engine optimization strategies. Those strategies allow Plaintiff to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's Products. Similarly, Defendants' individual Seller Aliases are also indexed on the Third-Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

38. Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions, as identified on Schedule A. Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this judicial district) through the manufacturing, online advertising and offering for sale, and importation and distribution of Infringing Products that bear Plaintiff's AQUABEADS Work, by operating e-commerce stores using their respective Store Names and Store IDs set forth on Schedule A hereto (collectively, the "Seller Aliases").

39. Defendants appear to be an interrelated group of infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, when in fact they are actually selling inferior imitations of Plaintiff's Products.

40. The Seller Aliases share unique identifiers with common design elements, such as the same or related products offered for sale, identical product descriptions or product titles, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Infringing Products and volume sales discounts.

41. These similar elements between Defendants' Seller Aliases establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence or series of transactions or occurrences.

42. Defendants attempt to evade detection and avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their infringing operation, including changing the names of their stores multiple times, opening new stores, assisting others with opening new stores, and making subtle changes to their products. Further, many of the Third-Party Platforms used by Defendants, including Temu and others, do not properly verify or confirm names or addresses used by operators of the stores, which allows infringers to open as many stores as they can using any number of names.

43. Tactics used by Defendants to conceal their identities and the full scope of their infringing operation make it difficult for Plaintiff to learn the precise scope and the exact interworking of their infringing network.

44. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

45. Plaintiff's business success and the worldwide popularity of the AQUABEADS brand have resulted in significant infringement of Plaintiff's federally protected AQUABEADS Work. Consequently, Plaintiff maintains an intellectual property enforcement program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

46. Plaintiff has identified many fully interactive e-commerce stores, including the Seller Aliases, offering for sale, and/or selling Infringing Products to consumers in this judicial district and throughout the United States on Third Party Platforms such as Temu and others.

47. Defendants operate at least the Seller Aliases identified in Schedule A and engage in infringing use of Plaintiff's AQUABEADS Work, including offering for sale and selling Infringing Products which has caused and is continuing to cause irreparable harm to Plaintiff's business.

48. Defendants' sale, distribution, and advertising of Infringing Products constitute unauthorized reproduction, distribution, and public display of Plaintiff's copyrighted AQUABEADS Work, causing harm to Plaintiff's exclusive rights and undermining the market for Plaintiff's authorized Products.

49. Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as Exhibit 2. Exhibit 2 shows that the designs used by Defendants are identical or substantially similar to Plaintiff's AQUABEADS Work.

50. In a 2024 report by the Office of the United States Trade Representative (USTR) titled 2024 Review of Notorious Markets for Counterfeiting and Piracy, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and

90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social-media-driven traffic. (*See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce).

51. E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, which allows infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

**The Scope of Defendants' Infringing Activities**

52. Upon information and belief, each Defendant operates more than one merchant storefront.

53. Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

## JOINDER OF DEFENDANTS

54. As stated above, upon information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use.

55. Further, such unauthorized retailers include other notable common features on their internet stores such as the use of the same registration patterns, accepted payment methods, check-

out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images.

56. The Infringing Products offered for sale by unauthorized retailers such as the Seller Aliases often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

57. Upon information and belief, Defendants are in communication with each other and with other infringers. They participate in online forums and chat rooms, including but not limited to WeChat chat rooms and websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits.

58. Upon information and belief, Defendants operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court.

59. Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for lesser amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

60. Upon information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside the jurisdiction of this Court.

61. Upon information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights. Defendants bear the hallmarks of an interrelated group of infringers that create numerous Seller Aliases and design their respective and collective stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products.

62. The Seller Aliases identified in Schedule A share unique identifiers, including: common design elements, the same or similar Infringing Products that they offer for sale, similar Infringing Product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced Infringing Products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

63. These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it highly difficult for Plaintiff to learn the precise scope and the exact interworking of their infringing network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**COUNT I**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)**

64. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

65. Plaintiff's AQUABEADS Work constitutes a creative, original work of authorship, fixed in a tangible medium of expression, and is protectable under U.S. copyright law. See 17

U.S.C. § 102. The AQUABEADS Work is the subject of a valid copyright registration, and Plaintiff is the holder of the pertinent exclusive rights therein, including the exclusive rights of reproduction and distribution.

66. Plaintiff is the holder of a valid and enforceable copyright in Plaintiff's AQUABEADS Work.

67. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's AQUABEADS Work and has obtained a valid copyright registration for Plaintiff's AQUABEADS Work. The copyright registration was effective on October 3, 2022, prior to the commencement of Defendants' infringing conduct, which entitles Plaintiff to seek statutory damages and attorney's fees under 17 U.S.C. § 412.

68. Defendants do not have any ownership interest in Plaintiff's AQUABEADS Work.

69. Upon information and belief, Defendants had access to Plaintiff's AQUABEADS Work via the internet and elsewhere, as evidenced by their sophisticated business operations, the use of Plaintiff's own product imagery in their listings, and the widespread availability of Plaintiff's AQUABEADS Work in commerce, and had actual or constructive knowledge of Plaintiff's copyright before engaging in the infringing activities described herein.

70. Without authorization from Plaintiff, the original creator of the AQUABEADS Work, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed Infringing Products incorporating Plaintiff's AQUABEADS Work, in connection with their operation of the Defendants' Internet-based stores.

71. Defendants' Infringing Products incorporate designs that are virtually identical to and/or are indistinguishably similar to Plaintiff's AQUABEADS Work.

72. Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's copyright in Plaintiff's AQUABEADS Work in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5). Defendants had knowledge of the infringing activity and materially contributed to it by providing the means for others to infringe Plaintiff's copyright through their distribution and sale of Infringing Products. Moreover, Defendants' actions have enabled and facilitated infringement by third parties who purchase and redistribute the Infringing Products. By providing the means and platform for this infringement, Defendants are also secondarily liable for contributory infringement, as established in *Leonard v. Stemtech Int'l, Inc*., 834 F.3d 376, 386 (3d Cir. 2016) citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

73. Defendants reap the benefits of their unauthorized reproduction, public display, and distribution of Plaintiff's AQUABEADS Work through their receipt of substantial revenue, including substantial profit, driven by high-volume sales of their Infringing Products.

74. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Infringing Products that use Plaintiff's AQUABEADS Work without its permission.

75. Defendants' infringement has been knowing, willful, intentional, and purposeful, and has been undertaken repeatedly in blatant disregard of Plaintiff's rights. On information and belief, Defendants had actual or constructive knowledge of Plaintiff's AQUABEADS Work given its widespread nature and Defendants' sophisticated business operations in the relevant market.

76. Defendants, by their actions, have caused and continue to cause financial injury to Plaintiff in an amount to be determined at trial, including but not limited to lost profits,

diminution in the value of Plaintiff's intellectual property, and costs associated with remedying the infringement.

77. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

78. Considering the foregoing, and as contemplated by 17 U.S.C. § 502, Plaintiff seeks injunctive relief prohibiting further infringement of Plaintiff's AQUABEADS Work by Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1) That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons who receive actual notice of this Court's Order and are acting for, with, by, through, under, or in active concert or participation with them, be permanently enjoined and restrained from the following actions:

(a) reproducing, distributing, publicly displaying, or preparing derivative works based upon the AQUABEADS Work;

(b) making, using, offering to sell, selling, or importing any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the AQUABEADS Work;

(c) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(d) aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's exclusive copyright in Plaintiff's AQUABEADS Work.

(2) Directing that Defendants deliver for destruction all Infringing Products and any other products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of Plaintiff's AQUABEADS Work.

(3) Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, online marketplaces, and other third parties who are in active concert or participation with Defendants and who have received actual notice of this Court's Order pursuant to Fed. R. Civ. P. 65(d)(2) shall, within two (2) business days of receipt of such notice:

(a) locate all accounts and assets held in the name of, or for the benefit of, Defendants, including but not limited to merchant accounts and payment processor accounts;

(b) restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c) upon entry of a final judgment awarding monetary relief to Plaintiff, transfer to Plaintiff all funds restrained in such accounts up to the amount of such monetary relief within ten (10) business days of receipt of written notice of such final judgment from Plaintiff's counsel.

(4) Entering an Order that, after entry of a final judgment and until Plaintiff has recovered full payment of monies owed to it by Defendants pursuant to such judgment, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff may petition this Court for authority to direct any banks, savings and loan associations, other financial

institutions, payment processors, and online marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

(a) locate all accounts connected to Defendants;

(b) restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c) transfer any funds restrained in such accounts to Plaintiff, up to the remaining unpaid amount of the final judgment, within ten (10) business days of receipt of a court order authorizing such transfer.

(5) Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work, per Defendant, or such other amount as the Court deems just and proper;

(6) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's AQUABEADS Work as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(7) Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(8) Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: November 4, 2026

Respectfully submitted,

*<u>/s/ Keaton Smith</u>*
Keaton Smith IL #6347736
Shengmao (Sam) Mu NY #5707021
Abby Neu IL #6327370
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: 872-294-3799
Email: ksmith@whitewoodlaw.com

*Counsel for Plaintiff*